**Robert E. RODRIGUEZ and Corina D. Rodriguez, Appellants**

v.

**CLASSICAL CUSTOM HOMES, INC., Appellee.**

No. 05–04–01377–CV.

Court of Appeals of Texas, Dallas.

Nov. 29, 2005.

James A. Baker, Hughes & Luce LLP, Dallas, for Appellant.

Jamil N. Alibhai, Sopuch Nouhan Higgins & Arnette, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice MORRIS.

In this appeal, Robert and Corina Rodriguez challenge the trial court's granting of a summary judgment in favor of Classical Custom Homes, Inc. on the home builder's claim for breach of contract. The Rodriguezes argue, among other things, that they presented sufficient summary judgment evidence either to establish their affirmative defense of waiver as a matter of law or, at a minimum, to raise a material fact issue about whether Classical waived its rights under the contract provision at issue. Concluding the summary judgment evidence raised a material issue of fact on the Rodriguezes' affirmative defense of waiver, we reverse the trial court's judgment and remand the cause to the trial court for further proceedings.

### I.

The parties' dispute arises out of a contract for the construction and purchase of a single family home. On August 29, 2002, Classical Custom Homes, Inc. and Robert and Corina Rodriguez executed a contract under which Classical agreed to build, and the Rodriguezes agreed to purchase, a home for the price of $1,749,400. The contract included a provision stating that,

> [i]f Purchaser fails to deliver to Seller a loan approval letter containing no conditions within sixty (60) days from the date hereof, Seller shall have the right to terminate this Agreement.

The contract further stated:

> In the event Purchaser does not close this transaction as set forth above for

any reason whatsoever, except Seller's default, including but not limited to Purchaser's failure or default in the performance of any part of this Agreement, Purchaser agrees that Seller shall be entitled to (i) collect and retain, not as penalty but as liquidated damages, the earnest money deposit and all other payments received and due from Purchaser and thereafter sell the Property to a third party.

On the same day they executed the contract, the Rodriguezes provided Classical with a loan approval letter. The letter stated that final approval of the loan was contingent upon the sale of the Rodriguezes' current home, completion of the new home, an acceptable appraisal, survey, and title commitment, and any other documentation necessary for loan funding. Classical never expressed any dissatisfaction with the loan approval letter until more than a year after the contract was executed.

Between August 2002 and October 2003, Classical worked with the Rodriguezes toward completion of the house. The summary judgment evidence shows the Rodriguezes provided Classical with an earnest money payment of over $100,000, as well as $30,000 to $50,000 in additional money during construction. Classical also sent the Rodriguezes change order forms asking them to approve additional expenditures. Disputes arose about the change orders and the quality of some of the materials purchased for the house. As a result, the Rodriguezes hired a construction supervisor to oversee the project on their behalf.

According to the summary judgment evidence submitted by the Rodriguezes, during the time the parties were working together on building the house, Classical's representatives repeatedly stated they had received numerous offers from third parties to purchase the house for more than the price the Rodriguezes had agreed to pay. Robert Rodriguez stated in an affidavit that one Classical representative offered not only to release them from the contract, but also to split any proceeds from the sale of the house in excess of the originally agreed upon purchase price. As part of their summary judgment evidence, the Rodriguezes also submitted the affidavit testimony of David Morgan, who stated he heard a Classical representative tell Robert Rodriguez, "If you don't want to buy that house, I have a lot of people who would want to buy it. I know I can sell it for a lot more money."

On October 29, 2003, Robert Rodriguez met with a Classical representative, Michael Marsolek, to discuss a possible release from the contract. Rodriguez characterized the conversation as merely exploring the option of terminating the contract so he could pursue an opportunity to purchase an automobile dealership. Rodriguez stated he was willing and able to continue with the purchase of the home if necessary. According to Marsolek, however, Rodriguez told him at their meeting that he "could not close" on the residence.

The next day, the Rodriguezes received a letter from Classical stating that as a result of recent communications about their "unwillingness to close on the purchase" of the house, Classical had reviewed the purchase contract and noted the Rodriguezes had not provided the company with an unconditional loan approval letter. Classical requested that an unconditional loan approval letter be provided within fifteen days or the company would consider the Rodriguezes in default under the terms of the contract. Classical stated that, in the event of a default, it would "exercise all of its rights and remedies." Classical's October 30 letter was the first

time the Rodriguezes were made aware that Classical was not willing to accept the loan approval letter they had provided shortly after the contract was signed.

The Rodriguezes responded to Classical's demand on October 31. The Rodriguezes accused Classical of breaching the contract by making unapproved changes to the house, including using a different type of windows than the Rodriguezes had specified. They also reminded Classical of the company's repeated offers to "take the house back and return all the earnest money." The Rodriguezes demanded that Classical return all the money they had deposited with the company.

On November 7, Classical's attorneys sent the Rodriguezes a letter stating the company would be willing to terminate the contract, but it would retain the earnest money and all other deposits it had been given. Classical sent a second letter on November 19 offering to go forward with the sale of the house to the Rodriguezes if they immediately provided an unconditional loan approval letter, signed and returned all outstanding change order forms, and deposited additional funds for upgrades and changes, including changes made after October 30 to make the house more marketable. Classical gave the Rodriguezes until November 21 to accept the offer. The record contains no response by the Rodriguezes to this demand.

Classical filed suit on December 2, 2003, seeking damages for breach of contract and a declaratory judgment that the company was entitled to terminate the contract and retain the earnest money and other sums on deposit. One day later, the Rodriguezes obtained an unconditional loan approval letter. The Rodriguezes responded to Classical's suit with a counterclaim for breach of contract and sought either specific performance or, in the alternative, a full release.

Classical moved for partial summary judgment on the ground that the uncontroverted evidence showed the Rodriguezes defaulted under the terms of the contract by failing to provide a loan approval letter with no conditions within sixty days of executing the contract. Classical further argued that it notified the Rodriguezes of the default and gave them fifteen days to cure it. Because the Rodriguezes did not provide Classical with an unconditional loan approval letter either in the initial sixty day period or within fifteen days of receiving notice of the default, Classical contended it was entitled under the terms of the contract to terminate the agreement and retain the earnest money and all other payments received and due from the Rodriguezes. In response to these arguments, the Rodriguezes contended Classical had waived its right to receive an unconditional loan approval letter and there were genuine issues of material fact about the alleged breaches of contract.

The trial court granted Classical's motion for partial summary judgment. Classical then moved for a second partial summary judgment on the Rodriguezes counterclaims arguing that the first partial summary judgment in the company's favor rendered the Rodriguezes' counterclaims meritless as a matter of law. The trial court granted Classical's second motion for partial summary judgment, thus disposing of all issues in the case. The Rodriguezes brought this appeal arguing the trial court erred in granting summary judgment.

## II.

In their first issue on appeal, the Rodriguezes contend the trial court erred in granting summary judgment on Classical's breach of contract claim because the summary judgment evidence shows that Classical waived its right under the con-

tract to receive an unconditional loan approval letter. Waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in conduct inconsistent with claiming the right. *See Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 643 (Tex.1996). The question of intent is key. *See Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855, 864 (Tex. 1958). Silence or inaction, for so long a period of time as to show an intention to yield the known right, is enough to prove waiver. *See Tenneco,* 925 S.W.2d at 643. Waiver may also occur when a party continues to insist on performance under a contract after it has been breached and the breaching party later performs. *See Walden v. Affiliated Computer Servs., Inc.,* 97 S.W.3d 303, 322 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). Whether waiver has occurred is ordinarily a question of fact for the trier of fact to decide. *See Tenneco,* 925 S.W.2d at 642.

In this case, the summary judgment evidence shows that Classical did not raise the issue of the Rodriguezes failure to provide an unconditional loan approval letter until more than a year after the letter was due under the contract. During that time, Classical continued working closely with the Rodriguezes on construction of the home. The Rodriguezes deposited $30,000 to $50,000 in additional funds with Classical and hired a construction supervisor to work with the company. We conclude this evidence raises a material fact issue about whether Classical intentionally waived its right under the contract to receive an unconditional loan approval letter.

■ Classical contends that even if it initially waived its right to an unconditional loan approval letter, it revived that right by giving the Rodriguezes notice of their default and an opportunity to cure. The company argues the Rodriguezes' failure to provide an unconditional loan approval letter until after it filed suit was a breach of contract as a matter of law.

■ It is well settled that even though a party may have waived a contract right in the past, it may enforce that right in the future by giving notice of its intention to do so and by allowing a reasonable time for the other party to comply. *See A.L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168 S.W.2d 629, 630 (Tex.1943); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co.,* 809 S.W.2d 589, 592 (Tex.App.-Dallas 1991, writ dism'd w.o.j.). What constitutes a reasonable time is generally a question of fact. *See Gawerc v. Montgomery County,* 47 S.W.3d 840, 843 (Tex.App.-Beaumont 2001, pet. denied). What may be a reasonable amount of time under one set of circumstances may be entirely inadequate under different circumstances. *See id.*

The contract provision at issue allowed the Rodriguezes sixty days to obtain a letter demonstrating they had received unconditional approval for a loan of approximately $1.5 million. When Classical a year later notified the Rodriguezes of its intent to enforce the provision, it allowed them only fifteen days to obtain such a letter. Classical filed suit thirty-three days after demanding compliance and the Rodriguezes provided the company with an unconditional loan approval letter thirty-four days after receiving the demand. Classical points to no summary judgment evidence showing the Rodriguezes were given a reasonable amount of time to comply with the loan approval requirement after Classical informed them of its intent to enforce the provision. Absent such evidence, we conclude there is a material question of fact with respect to whether Classical successfully revived its contractual right.

Because material questions of fact exist with respect to Classical's alleged waiver of its right to receive an unconditional loan approval letter, we conclude the trial court erred in granting summary judgment in favor of Classical. Given this, it is unnecessary for us to address the remainder of the Rodriguezes' issues on appeal. We reverse the trial court's judgment and remand the cause for further proceedings.